## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DAVID PHAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 09-cv-97-P-S |
| | ) |
| NEW PAGE CORPORATION and | ) |
| RUMFORD PAPER COMPANY, | ) |
| | ) |
| Defendants. | ) |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff David Phair alleges that Defendants New Page Corporation and Rumford Paper Company terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA") and the Maine Human Rights Act ("MHRA"). Before the Court are Defendants' Motion for Summary Judgment (Docket # 23) and Defendants' Motion to Exclude Evidence (Docket # 25). As explained herein, the Court DENIES the Motions.

### I.   MOTION TO EXCLUDE EXPERT TESTIMONY

The Court will first address Defendants' evidentiary motion as it affects the relevant pool of evidence for the summary judgment motion. Defendants have moved to exclude the testimony of Dr. Jonathan Goldstein, Plaintiff's expert witness, pursuant to Federal Rule of Evidence 702 (Docket # 25). Rule 702 provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." The Court serves as the gatekeeper for the admission of expert testimony and, absent proper qualifications and foundation, an expert's testimony is inadmissible as a matter of law. United States v. Diaz, 300 F.3d 66, 73 (1st Cir.

2002). The First Circuit has held that, before admitting expert testimony, a Court must determine: (1) whether the expert is qualified by knowledge, skill, experience, training or education; (2) whether the proffered testimony concerns scientific, technical or other specialized knowledge; and (3) whether the proffered testimony will assist the trier of fact in understanding or determining a fact in issue. Correa v. Cruises, 298 F.3d 13, 24 (1st Cir. 2002).

Defendants challenge the third-prong of the First Circuit's test arguing that Dr. Goldstein's testimony will not assist the trier of fact because it is "not based on sufficient facts or data and is not the product of sufficient facts or data." (Defs.' Mot. to Exclude Testimony (Docket # 25) at 3.) Defendants admit that the statistical methods used by Dr. Goldstein are commonly used and that he did not make any computational errors. (Speakman Dep. (Docket # 23-9) at 39-40.) Defendants take issue with the data set used by Dr. Goldstein and challenge his conclusions drawn from that data.

Having reviewed Dr. Goldstein's reports, as well as his testimony, the Court is satisfied that this evidence meets the requirements of Rule 702 for the purposes of the instant motion. "Statistical analyses have been held admissible in disparate treatment discrimination cases unless they are so incomplete as to be inadmissible as irrelevant." Currier v. United Technologies Corp., 393 F.3d 246, 251 (1st Cir. 2004) (internal quotations omitted). The Court finds that Defendants' objections "go to the weight of the proffered testimony, not to its admissibility" for purposes of Rule 702. Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007). At this point, the Court believes that Defendants' arguments are best addressed at trial with question-specific objections and "the adversary process" of "competing expert testimony and active cross-

examination." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998). Accordingly, Defendants' Motion to Exclude Testimony is DENIED without prejudice.[1]

## II. SUMMARY JUDGMENT STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial-worthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come

---

[1] Although the Court is not convinced that Dr. Goldstein's testimony should be excluded under Rule 702, there may be legitimate concerns about the appropriateness of various aspects of the methodology and certain conclusions reached by both Dr. Goldstein and Defendants' expert, Dr. Speakman. See Currier, 393 F.3d at 252-53 (holding that the admissibility of the statistical evidence was a close call based on flaws in the methodology). Nothing in this ruling is intended to limit the parties' ability to re-raise issues related to the admissibility of expert testimony prior to or during trial.

3

forward with sufficient evidence to generate a trial-worthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### III. FACTUAL BACKGROUND

In 2005, Defendant NewPage Corporation purchased Defendant Rumford Paper Company, along with several other paper mills across the country. In 2007, NewPage performed a company-wide analysis and decided to shut down the R11 machine at the Rumford mill. Based on this decision, Gerald LeClaire, manager of the Rumford mill, determined that it was necessary to conduct a reduction in force. Rather than terminate the salaried employees that worked on the R11 machine simply because that machine was being shut down, LeClaire wanted to consider every salaried employee for termination in conjunction with the reduction in force. LeClaire asked the managers who worked under him for recommendations as to which positions in their chain of command could be consolidated and/or eliminated.

LeClaire held numerous meetings with his management team to discuss the reduction in force and determine which salaried employees should be eliminated. During at least one of these meetings, some managers expressed concern about the aging workforce at the mill.[2] Although LeClare asserts that every salaried employee's job was on the line, not every salaried employee was discussed at these meetings. The managers did not conduct a comprehensive review of all salaried employees' personnel files or their performance reviews. Instead of thoroughly examining each salaried employee, some managers provided anecdotal evidence with respect to their opinion about whether a certain employee was a good fit at the mill. Overall, the process of

---

[2] Defendant argues that these concerns were directed at the hourly workforce. However, a factfinder could reasonably infer that some managers were concerned with the aging of the salaried workforce.

4

selecting which salaried managers would be terminated as part of the reduction in force was subjective.

Bob Gagner, maintenance manager for the Rumford mill, nominated the position of maintenance planner/supervisor of the groundwood operations as one that could be combined or eliminated. At the time of Gagner's recommendation, Plaintiff David Phair occupied the position of maintenance planner/supervisor of the groundwood operations. Gagner nominated Plaintiff for termination not because of performance issues, but because he believed that Plaintiff's position was superfluous. Gagner was Plaintiff's direct supervisor but he did not provide any feedback on Plaintiff's job performance during the management meetings.

As a result of these meetings, it was decided that the two salaried employees (age 47 and 51) who worked on the R11 machine would be offered transfers to different positions. The maintenance planner/supervisor position was not eliminated during the reduction in force. However, the position was offered to Richard Childs (age 50). Plaintiff was offered a transfer to a temporary position which required extensive travel. Plaintiff declined the transfer and was terminated on February 28, 2008.

In all, the January 2008 reduction in force resulted in the salaried workforce at the mill being reduced by eight employees. Two salaried individuals (age 61 and 59) took advantage of a voluntary early retirement program. Plaintiff (age 55) and one other employee (age 61) were offered transfers and were terminated when they declined. Four additional salaried employees (age 48, 54, 60 and 60) were terminated without being offered transfers.

Based on these facts, Plaintiff brought the instant action alleging that he was terminated based on his age in violation of the ADEA and the MHRA.

## IV. DISCUSSION

Defendants move for summary judgment on Plaintiff's claims under the ADEA and MHRA arguing that Plaintiff has failed to show that his termination was based on age. Generally, age discrimination can be proven by showing either disparate treatment or disparate impact. Although Defendants' Motion argues that Plaintiff has failed to show either disparate treatment or disparate impact, Plaintiffs responds only to the disparate treatment claim. Thus, to the extent that Plaintiff alleged a disparate impact violation, such claim has been waived.[3] (Pl.'s Opp. to Defs.' Mot. for Summary Judgment (Docket # 32) at 10.)

### A. Disparate Treatment

Pursuant to the ADEA, an employer may not "fail or refuse to hire" an individual "because of such individual's age." 29 U.S.C. § 623; see also 5 M.R.S.A. § 4572(1)(A).[4] In the absence of direct evidence of age discrimination, the Court's analysis proceeds under the familiar McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under this framework, Plaintiff must first establish a prima facie case of discrimination. A successful prima facie showing creates an inference of discrimination and shifts the burden to Defendants "to articulate a legitimate, nondiscriminatory reason" for terminating Plaintiff. Gu v. Boston Police Dep't, 312 F.3d 6, 12 (1st Cir. 2002). "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

---

[3] The Court also notes that Plaintiff specifically stated that he is not pursuing a mixed-motive analysis. Even if Plaintiff had requested a mixed-motive analysis, the Court would have declined. In Gross v. FBL Financial Servcies, Inc., 129 S. Ct. 2343 (2009), the Supreme Court held that the mixed-motive analysis was not appropriate in ADEA cases.

[4] Maine courts apply the MHRA in accordance with federal anti-discrimination law, including the ADEA. See Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 228 n.1 (1st Cir. 2007); Thorndike v. Kmart Corp., 35 F. Supp. 2d 30, 32 (D. Me. 1999). Thus, the Court's analysis pertains to both the federal and state claims.

6

At the final stage, the inference of discrimination vanishes, and Plaintiff must demonstrate that Defendants' proffered justification is pretextual and that his termination "was instead motivated by discriminatory animus." Rivera Rodriguez v. Sears Roebuck de Puerto Rico, Inc., 367 F. Supp. 2d 216, 223 (D.P.R. 2005); see also Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998). In some cases, "the plaintiff's prima facie case together with sufficient evidence of pretext [may] support an inference of discrimination." Currier v. United Techs. Corp., 393 F.3d 246, 255 (1st Cir. 2004); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). In other words, "a plaintiff may survive summary judgment not by unearthing positive evidence of a discriminatory motive, but by showing that an employer's proffered justification for its adverse employment action was such that a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico, 404 F.3d 42, 44 (1st Cir. 2005) (citation and internal punctuation omitted).

Finally, the Court's role is not "to second-guess the business decisions of an employer, nor to impose [its] subjective judgments of which person would best fulfill the responsibilities of a certain job." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990). "Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825.

### 1. Plaintiff's prima facie case

"The elements of the prescribed prima facie case vary, within the age discrimination context, depending upon whether or not the plaintiff was dismissed as part of a reduction in force." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). If there was no reduction in force, a plaintiff must establish: (1) he was at least forty years old; (2) he met the

7

employer's job performance expectations; (3) the employer took an adverse employment action against him; and (4) he was replaced by a person with roughly equivalent job qualifications. Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993). If there was a reduction in force, the fourth element changes and a plaintiff must establish either that the employer did not treat age neutrally or that younger persons were retained in the same position. Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997).

Plaintiff was fifty-five at the time of his termination, thereby satisfying the first prong of the prima facie showing. The test for the second prong of the prima facie case is "whether the employee has a record of performing acceptably and meeting the demands of his job." LeBlanc, 150 F.3d at 27. Plaintiff has submitted significant evidence showing a positive work history. (PSMF ¶¶ 108, 109, 113, 115.) Moreover, Defendants admit that the persons being considered for termination in January 2008 did not have performance issues. (DSMF ¶ 56.) Plaintiff has therefore satisfied the second prong of his prima facie burden.

With respect to whether Plaintiff was subject to an adverse employment action, Defendants argue that Plaintiff cannot meet his prima facie burden because they offered him a lateral transfer which he declined. "Adverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted job evaluations, and toleration of harassment by other employees." White v. New Hampshire Dept. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000). A purely lateral transfer that "does not involve a demotion in form or substance[] cannot rise to the level of a materially adverse employment action." Marrero v. Goya of Puerto Rico, 304 F.3d 7, 23 (1st Cir. 2002).

It is undisputed that the job offered to Plaintiff was a temporary position that required extensive travel. The deprivation of job security can constitute an adverse employment action.

See id., at 25 n.5. Moreover, transfer to a position requiring extensive travel can be an adverse employment action. See Alford v. Florida, 390 F. Supp. 2d 1236, 1248 (S.D. Fla. 2005); Deavenport v. MCI Telecommunications Corp., 973 F. Supp. 1221, 1227 (D. Colo. 1997). A reasonable person could consider a transfer from a permanent position that required no travel to a temporary position requiring extensive travel to be disadvantageous. Given the nature of the transfer offered to Plaintiff, the Court finds that there is a triable issue of fact as to whether he suffered an adverse employment action.

The parties dispute whether Plaintiff was terminated as part of a reduction in force and, therefore, which fourth prong of the prima facie inquiry applies here. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." LeBlanc, 6 F.3d at 845 (quoting Barnes v. GenCorp. Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)). The parties agree that economic considerations motivated Defendants to shut down a machine at the mill, which resulted in the loss of two salaried positions. Plaintiff was one of the two salaried managers terminated, which suggests that Plaintiff was terminated as a result of a reduction in force.

However, "[a]n employee is not eliminated as part of a reduction in force when he or she is replaced after his or her discharge." Id. (quoting Barnes, 896 F.2d at 1457). Plaintiff's job was not eliminated as part of the reduction in force. Because Plaintiff was replaced as maintenance planner/supervisor of the groundwood operations by Richard Childs, it is arguable that he was not terminated as a result of a reduction in force.

The Court need not decide, at this stage of the litigation, whether Plaintiff was terminated as a result of the reduction in force because Plaintiff has met his prima facie burden under either test. Assuming that Plaintiff was terminated as a result of a reduction in force, Plaintiff must

show that Defendants did not treat age neutrally or that younger persons were retained in his former position. "Lack of neutrality may be manifested either by a facially discriminatory policy or by a policy which, though age-neutral on its face, has the effect of discriminating against older persons, say, by leading inexorably to the retention of younger employees while similarly situated older employees are given their walking papers." LeBlanc, 150 F.3d at 27 (quoting Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993)). Statistical evidence showing that a reduction in force disproportionately affected older workers can be used to show that a reduction in force was not age-neutral. Id. at 28. Plaintiff has submitted expert statistical evidence showing an association between the age and the likelihood of termination as a result of the reduction in force. Moreover, there is evidence that Defendants retained six workers who were younger than fifty in the position of maintenance supervisor. (Def.'s Employment Termination Disclosure (Docket # 33-12) at 2.) Thus, Plaintiff has introduced sufficient evidence to satisfy his burden with respect to the fourth prong of the reduction in force prima facie analysis.

Assuming that Plaintiff was not terminated as a result of a reduction in force, whether Plaintiff has met his prima facie burden with respect to the fourth prong is a close call. The Supreme Court has held that a plaintiff must show that he was replaced by someone "substantially younger" in order to establish an inference of age discrimination. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996). The age difference between Plaintiff and his replacement is four years and nine months. A number of courts have held that five years is not a substantial age difference. See Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998); Schlitz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997). However, other circuits disagree. See Damen v. Flemming Supermarkets of Florida, Inc., 196 F.3d 1354,

10

1360 (11th Cir. 1997) (five years is substantially younger). The First Circuit has held that a difference of three years was not substantial. See Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000). Given the split of authority and the lack of controlling precedent with respect to whether almost five years is substantially younger, the Court finds that Plaintiff has met his prima facie burden in this case.

### 2. Defendants' legitimate, non-discriminatory basis

Plaintiff's prima facie showing creates an inference of discrimination and shifts the burden to Defendants "to articulate a legitimate, nondiscriminatory reason" for terminating Plaintiff. Gu v. Boston Police Dep't, 312 F.3d 6, 12 (1st Cir. 2002) (discussing prima facie test in context of failure to hire). Defendants contend that Plaintiff was terminated due to economic circumstances. Defendants assert that they engaged in a thorough and fair process which revealed Plaintiff to be among the lowest performing employees and that he was selected for termination on this basis.

A reduction in force based on economic circumstances is a legitimate non-discriminatory reason for a termination. See LeBlanc, 6 F.3d at 845. Likewise, terminating the lowest performing employees as part of a reduction in force is a legitimate non-discriminatory reason. See, e.g., Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 28 (1st Cir. 1998) (terminating lowest ranking performer was legitimate, non-discriminatory basis); Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994) (eliminating lowest ranking employee in department pursuant to a reduction in force is legitimate). Because Defendants have introduced admissible evidence

that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of Plaintiff's termination, they have met their burden.[5]

### 3. Pretext

Because Defendants have established a legitimate, non-discriminatory basis for Plaintiff's termination, the presumption of age discrimination drops away. LeBlanc, 6 F.3d at 845. At this stage, a plaintiff must show "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143. "An assertion of pretext requires an examination of the employer's articulated reason for termination." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002). If a plaintiff can show that the employer's proffered basis for termination is false or implausible, a reasonable factfinder could infer that the employer did not act for the asserted reasons. See Billings v. Town of Grafton, 515 F.3d 39, 55-56 (1st Cir. 2008).

"In assessing pretext, a court's focus must be on the perception of the decision-maker, that is, whether the employer believed its stated reason to be credible." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006). The decision-maker with respect to Plaintiff's termination was Gerald LeClaire. (Gagner Aff. (Docket # 33-2) at 10.) LeClaire contends that Plaintiff was chosen for termination only after the management team conducted a thorough review of all salaried employees and determined that Plaintiff was a low performer. (LeClaire Dep. at 40.)

Plaintiff has introduced evidence that calls into question the veracity of LeClaire's statements with respect to whether management conducted a thorough review before making its termination decisions and whether Plaintiff was a lower performer. For example, the managers

---

[5] To the extent Defendants' non-discriminatory reason for Plaintiff's termination is a reduction in force required by economic considerations, this evidence suggests that Plaintiff falls under the reduction in force prima facie case. See supra IV, A.1.

did not review all salaried employees' personnel files; rather they relied on "anecdotal evidence" of who was performing well in making their recommendations for termination. (Hall Dep. (Docket # 23-1) at 26-27.) Plaintiff has put forth evidence that some salaried managers, specifically much younger individuals who had been in their positions for less than one year, were not discussed at the meetings at all. (Id.; LeClaire Dep. at 54-56.)

Defendants have admitted that the process used to select Plaintiff for termination was subjective. (LeClaire Dep. at 67.) Subjectivity in the standards used to assess an employee's performance can be used, consciously or otherwise, to mask unlawful discrimination. See Robinson v. Polariod Corp., 732 F.2d 1010, 1015 (1st Cir. 1984) (factors such as past performance and future potential "call[] for patently subjective evaluations which could easily mask covert or unconscious ... discrimination.")

As to Plaintiff in particular, there was no examination of his work history or performance reviews during the management meetings. (Hall Dep. at 26-27, 100.) The only person alleged to have provided any feedback on Plaintiff during the meetings was Bob Gagner, and Gagner denies making negative comments about Plaintiff's performance. (Gagner Aff. ¶ 4.) When asked about knowledge he obtained outside of the management meetings, LeClaire could recall having received only one instance of negative feedback regarding Plaintiff. He alleged that Judy Sanborn complained of Plaintiff's reaction to a safety situation. However, Plaintiff has submitted evidence from Sanborn disputing LeClaire's version of this event. (See Sanborn Aff. (Docket # 33-8) ¶¶ 17-19.)

In all, the Court finds that the evidence submitted by Plaintiff calls into question the veracity of the bases for termination proffered by the decisionmaker in this case. Plaintiff has produced extensive evidence showing his positive work history at the mill right up to the time of

13

his termination. Defendants have produced nothing but anecdotal evidence (which Plaintiff has rebutted) showing that he was a poor performer. As the First Circuit has noted, the "sudden emergence" of performance issues could lead a trier of fact to conclude that the stated reason for termination was pretext. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002). Thus, a reasonable factfinder could find the employer's proffered basis for termination unworthy of credence and, therefore, infer that Defendants did not act for the reasons asserted. Billings, 515 F.3d at 55-56.

It is not enough, however, for a plaintiff to prove that the employer's proffered basis for termination is false. Azimi, 456 F.3d at 246. "Ultimately, the plaintiffs burden is to prove 'that age was the "but-for" cause of the employer's adverse action.'" Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 448 (1st Cir. 2009) (quoting Gross, 239 S. Ct. at 2351)). A plaintiff is not required to produce independent evidence of discriminatory animus, "the trier may infer the ultimate fact of discrimination from components of the plaintiff's prima facie showing combined with compelling proof of the pretextual nature of the employer's explanation." Rathbun v. Autozone, Inc., 361 F.3d 62, 72 (1st Cir. 2004).

To meet this burden, Plaintiff has produced evidence showing that Defendants were age conscious in making their termination decisions, as well as evidence showing that the reduction in force adversely affected older workers. Discriminatory comments and statistical evidence are both valid means of meeting the Plaintiff's burden. See Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). The record also contains a number of charts prepared by Defendants prior to the management meetings which include the ages for certain employees, at least some of whom were discussed as potential targets of the reduction in force. (Def.'s Employment Termination Program Disclosure (Docket # 23-12) at 42.) The record also contains notes from

the management meetings which state that some managers expressed concern over the aging workforce at the mill. (LeClaire Dep. at 70, ex. 3.)

"While 'proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual,' it 'may add color to all employer's decisionmaking process.'" Brennan, 150 F.3d at 28 (quoting Ruiz v. Posadas de San Juan Assoc., 124 F.3d 243, 249 (1st Cir. 1997)). The numerous references to age in the record, some of which occurred during the meetings in which Plaintiff's termination was discussed, could lead a jury to conclude that Defendants were motivated by age in making the termination decision.

Moreover, Plaintiff has produced statistical evidence showing a correlation between age and the likelihood of termination. Statistical analyses are admissible in disparate treatment cases "unless they are 'so incomplete as to be inadmissible as irrelevant.'"[6] McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 303 (1st Cir. 1998) (quoting Basemore v. Friday, 478 U.S. 385, 400 n.10 (1986)). As discussed above, Plaintiff's statistical evidence, while certainly open to criticism, is not so incomplete as to be inadmissible. Dr. Goldstein found that "there is sufficient statistical evidence to conclude that age was a factor in determining employee termination. In other words, older workers were over-represented in the group of terminated employees." (Goldstein Rep. (Docket # 33-14) at 4.) Dr. Goldstein concluded that the statistical evidence of age discrimination was particularly strong when looking at workers aged fifty-five or older, such as the Plaintiff in this case. (Id. at 6.)

---

[6] Though Defendants have objected to the admissibility and reliability of the computations made by Dr. Goldstein, the First Circuit has observed the difficulties in assessing the admissibility of complex expert testimony prior to trial when the exact nature of the testimony is unknown. See Currier, 393 F.3d at 250. As discussed above, the Court finds that, at least for purposes of the instant motion, the testimony of Dr. Goldstein is admissible for the purposes of showing that there was a correlation between age and likelihood of termination during the reduction in force at issue here.

Defendants point out that statistical evidence "carries less probative weight [in a disparate treatment case] than it does in a disparate impact case." LeBlanc, 6 F.3d at 848. However, as the First Circuit has stated: "After examining all of the evidence, the jury might [conclude] that the disproportionately high number of older persons ranked low and discharged was not indicative of discrimination. But this determination is rightly within the jury's province, not the court's." Brennan, 150 F.3d at 30. Plaintiff's evidence showing that the Defendants' proffered basis for termination may be false, combined with the evidence of animus towards older workers at the management meetings, as well as the statistical evidence, creates a triable issue of fact as to whether Plaintiff's age was a "but for" factor in his termination. See McMillan, 140 F.3d at 304 (a jury could find pretext when plaintiff introduced statistical evidence along with other evidence of pretext); Currier, 393 F.3d at 255-56 (statistical evidence plus evidence of age animus supported jury verdict). Accordingly, Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs claims under the ADEA and the MHRA.

### B.   Integrated Enterprise/Employer

Defendants also move for summary judgment on Plaintiff's claim that NewPage Corporation and Rumford Paper Company are an integrated enterprise. It is undisputed that Rumford Paper Company is a wholly-owned subsidiary of NewPage Corporation. However, "there is a 'strong presumption that a parent corporation is not the employer of its subsidiary's employees.'" Englehardt v. S.P. Richards, Co., Inc., 472 F.3d 1, 4 (1st Cir. 2006) (quoting Lusk v. Foxmeyer Health, Corp., 129 F.3d 773, 778 (5th Cir. 1997)). The test for whether a parent corporation is an integrated employer involves weighing the following factors: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) common ownership. 29 C.F.R. § 825.104(c)(1) and (2). The Court takes a "flexible

approach" to these four factors and places special emphasis on whether "the parent exerts an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." Romano v. U-Haul Intern., 233 F.3d 655, 666 (1st Cir. 2000).

The Court finds that whether NewPage Corporation is an integrated employer with Rumford Paper Company is a jury question. The record shows that the two companies have intertwined management. Richard Willette is the CEO and president of both NewPage and Rumford. Seven of Rumford's nine corporate officers are also officers of NewPage and/or other NewPage subsidiaries. Moreover, a number of Rumford's top managers stated both that they felt they were employees of both Rumford and NewPage and that they reported directly to employees at NewPage.

With respect to operations, the NewPage mills, including the Rumford mill, operate as a system rather than individually. Rumford does not engage in sales, NewPage employs the sales people on Rumford's behalf. NewPage directs Rumford's production telling Rumford what products to make. Rumford sometimes produces product for NewPage's other mills.

As to labor relations, the majority of Rumford's personnel policies were provided by NewPage. Rumford's Director of Human Resources testified that she consults regularly with NewPage's corporate human resources department. Personnel commonly transfer between Rumford and NewPage.

Considering the totality of the evidence on this issue, Plaintiff has shown that there is a trialworthy issue with respect to whether NewPage and Rumford are integrated employers.

**IV.     CONCLUSION**

For the reasons explained herein, the Court DENIES without prejudice Defendants' Motion to Exclude Testimony (Docket # 25) and DENIES Defendants' Motion for Summary Judgment (Docket # 23).

SO ORDERED.

                                              /s/ George Z. Singal
                                              United States District Judge

Dated this 15th day of April, 2010.